IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
at Santa Fe, NM

JAN 27 2003

ROBERT M. MARCH, Clerk
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**SHANNON YOUNG,**

        **Plaintiff,**

v.                                            No. CIV 02-941 MV/LFG

**FRATERNAL ORDER OF POLICE CREDIT
UNION, ET AL, and DORA GREEN, Individually,**

        **Defendants,**

**FRATERNAL ORDER OF POLICE CREDIT UNION,**

        **Counterclaimant,**

v.

**SHANNON YOUNG,**

        **Counterdefendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Fraternal Order of Police Credit Union and Dora Green's ("Defendants") Motion to Dismiss this case with prejudice [doc. 27].[1] After careful consideration of the pleadings and the pertinent law, the Court determines that Plaintiff has failed to

---

[1] United States Magistrate Judge Lorenzo F. Garcia stayed discovery in this matter pending consideration and resolution of the Motion to Dismiss. [October 16, 2002 Order.] Notwithstanding the stay on discovery, there have already been 72 pleadings and/or orders docketed from the date the Complaint was filed in August 2002, many of which Plaintiff initiated. Judge Garcia has stricken a number of Plaintiff's pleadings including his inappropriate responses to Answers, sur-replies, "Points of Order" and "Praecipes", after concluding that these pleadings were unauthorized by the rules and/or improper. Plaintiff was warned on a number of occasions during this litigation about his use of improper pleadings.

1



state a claim upon which relief can be granted and failed to plead any claims of fraud with sufficient particularity and specificity. Accordingly, Defendants' Motion to Dismiss is granted and the case is dismissed, with prejudice. In addition, the Court dismisses Defendant Credit Union's counterclaims against Young, without prejudice.[2]

## Background

On August 1, 2002, Plaintiff Young ("Young") filed a *pro se* Complaint against Defendants. The Complaint[3] sets forth the following eleven alleged violations:

(1) issuance of fraudulent loans, without lawful consideration, by Defendant Credit Union, in violation of Article I, Section 10 of the United States Constitution;

(2) "threatening to commit the wrongful act of theft" by Defendant Credit Union in violation of Amendment IV of the Constitution and 42 U.S.C. § 1985;

(3) denial of due process by Defendant Credit Union by its alleged hiring of an agency to attempt to re-possess an automobile from Young;

(4) conspiracy to commit fraud by Defendant Credit Union for its loans to Young allegedly created through "fraudulent and extortionate means" in violation of a number of federal statutes;

(5) violation of "the Monetary Control Act of 1980" by Defendant Credit Union;

(6) fraud by Defendants in "utilizing the United States Postal Service";

(7) improper debt collection under 15 U.S.C. § 1692(e) and defamation by Defendant Credit Union;

(8) defamation by Defendant Credit Union through alleged statements made by agents to acquaintances of Young and/or to Young;

(9) fraud by Defendant Credit Union in "attempting to assert a right acquired by fraud to the property . . . owned by . . . Young;"

---

[2]On September 12, 2002, Defendant Credit Union filed two counterclaims against Young, stating that the counterclaims fell within this Court's ancillary jurisdiction. [Doc. 24, p. 8, ¶ 3.] Because the Court is dismissing Young's Complaint, it declines to exercise supplemental jurisdiction over the counterclaims. However, the counterclaims are dismissed without prejudice, and Defendant is free to pursue these claims in a proper court, should it elect to do so.

[3]Young's Complaint was apparently drafted with great assistance from Internet information found at a site called James Fuqua's Law Jokes – How to Get Out of a Bank Loan. (www.jamesfuqua.com/lawyers/jokes)

      (10)    breach of contract by Defendant Credit Union; and
      (11)    violation of civil rights under 42 U.S.C. § 1986 by Defendant Young by alleged failure to prevent Defendant Credit Union's "wrongful acts."

[doc. 1, Complaint of Breach of Contract and Deprivation of Rights and Fraud and Racketeering and Conspiracy to Committ (sic) Fraud and Mail Fraud and Defamation and Tort and Neglect to Prevent".]

The following facts are taken from Young's Complaint and form the basis of Young's claims against Defendants. In the 1999-2002 time frame, Defendant Credit Union issued several loans to Young, some of which were apparently for the purchase of an automobile. The Credit Union made a wire transfer to the auto dealer from which Young purchased an automobile. The approximate total amount of the combined loans, without interest, is over $16,000. Young made payments on the loans to Defendant Credit Union for a certain period of time. However, Young ceased making payments on the loans in about March 2002. [Doc. 1, p. 4, ¶ 8.] He claimed that he was no longer able to make payments on the loans and further alleged that after learning that the National Credit Union Administration ("NCUA") insured the Credit Union he believed the NCUA insurance would "kick in" and re-pay his loan payments. [Id.]

Defendant Green, a senior loan officer from the Credit Union, informed Young that the NCUA insurance was not intended to re-pay loans on behalf of members, but rather was provided in the event the credit union failed or collapsed. [Doc. 1, p. 4, ¶ 9.]

When Young ceased making payments on the loans, it appears that he also asserted, for the first time, the claim that the Credit Union's loans to him had been made fraudulently because the Credit Union charged him interest on "created credit", "used fractional reserve banking procedures,"

3

"created money out of nothing on its books", and did not give "lawful consideration." [Doc. 1, p. 5, top half of page.]

On May 15, 2002, Young received a letter from the Credit Union informing him that his loans were past due and in default and that his accounts would be referred for collection if payment was not paid. [Doc. 1, p. 5, ¶ 15.]

In addition to the above, Young asserts that on about July 12, 2002, he received a call from an individual who identified himself as Sergeant Wayne Allen of the Tulsa Police Department. Sergeant Allen purportedly told Young that the Credit Union had filed a complaint of fraud against him and that the Tulsa Police Department might have to file embezzlement charges against him. [Doc. 1, p. 6, ¶ 26.] Young does not allege that the Credit Union actually did file a "complaint of fraud" against him or that the Tulsa Police Department filed embezzlement charges against him.

On July 24, 2002, Young claims that a friend of his was contacted by telephone by a company identified as Mile High Recovery and that the company's representative told Young's friend that the friend's number was the only number it had for Young. [Doc. 1, p. 8, ¶ 28.] Young then contacted Mile High Recovery and was informed that the Credit Union had hired it to take possession of the automobile that Young purchased with the loan or loans described above. [Doc. 1, p. 8, ¶ 29.] On about July 29, 2002, Young states that Mile High Recover "left a message" with another friend of his and "made a similar statement as the one" made to Young's other friend. [Doc. 1, p. 9, ¶ 32.] Young further claims that Defendants defamed him by "eluding to one or more Citizens and/or public officer(s) that Young has committed crimes and/or wrongful acts" against the Credit Union. [Doc. 1, p. 10, ¶ 1p.] Young does not allege that his automobile actually was repossessed.

4

Defendants moved to dismiss Young's Complaint with prejudice for failure to state a claim under Fed.R.Civ.P. 12(b)(6). In addition, Defendants assert that the claims of fraud must be dismissed for failure to allege fraud with particularity as required by Rule 9(b).

### Legal Standard

The Court is mindful, as it must be, that Young is representing himself in this matter. As a *pro se* plaintiff, Young's submissions are held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173 (1980) (per curiam) (internal quotation omitted). A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit his rights by virtue of a lack of legal training. However, a plaintiff's *pro se* status does not "exempt him from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation omitted).

The court will dismiss a cause of action for failure to state a claim under Rule 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of his theories of recovery that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957); Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998). In deciding whether dismissal of a lawsuit under Rule 12(b)(6) is proper, the court must accept as true all well-pleaded facts, as distinguished from conclusory allegations. In addition, all reasonable inferences from those facts are viewed in favor of the plaintiff. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).

The issue in resolving a Rule 12(b)(6) motion is not whether the plaintiff would actually prevail, but whether he is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974), *overruled on other grounds*, Davis v. Scheuer, 468 U.S. 183

5

(1984).. Moreover, the plaintiff does not need to precisely state each element of his claims, but he must plead minimal factual allegations on material elements that must be proved. *See* Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "Thus, to plead a fraud claim, plaintiff must describe the circumstances of the fraud, *i.e.*, the time, place and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation." Full Faith Church of Love West, Inc. v. Hoover Treated Wood Products, Inc., 224 F. Supp. 2d 1285, 1287 (D. Kan. 2002).

## Analysis

In essence, Young's eleven claims boil down to the argument that because the Credit Union conveyed the loan by wire transfer to the auto dealer, the loan was not valid since the Credit Union did not convey the funds to him in "gold or silver." Thus, Young argues that there was no "lawful consideration" for the loans and that he owes no money.

Many Courts have considered and rejected exactly these types of arguments (by tax protesters and others). Indeed, such claims have been found frivolous, if not irrational. *See, e.g.*, United States v. Greenstreet, 912 F. Supp. 224, 229 (N.D. Tex 1996) (plaintiff's argument that federal reserve notes issued by the Farmers Home Administration were not "legal tender" is irrational); Milam v. United States, 524 F.2d 629, 630 (9th Cir. 1974) (plaintiff/appellant's contentions that a federal reserve bank note must be redeemed in "lawful money," *i.e.*, gold or silver, were "put at rest close to a century ago . . . ." and are frivolous); United States v. Rickman, 638 F.2d 182, 184 (10th Cir.

1980) (rejecting argument that federal reserve notes were not "lawful money" and/or that earnings must be valued in terms of gold); Edgar v. Inland Steel Co., 744 F.2d 1276, 1278 n.4 (7th Cir. 1984) (per curiam) (rejecting argument that "federal reserve notes are not money"); United States v. Shields, 642 F.2d 230, 231 (8th Cir. 1981) (same), *cert. denied*, 454 U.S. 848 (1981).

In a similar *pro se* case, a trial court granted a Rule 12(b)(6) motion to dismiss where plaintiffs claimed that a mortgage loan was invalid and/or fraudulent since the mortgagee issued a check instead of giving the mortgagors "legal tender." Rene v. Citibank NA, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999).[4] The Renes argued that they applied for a mortgage from Citibank "for lawful money of the United States" and instead received a check which was not backed by lawful money, *i.e.*, gold, coins, etc. Id. at 544. Like Young, the Renes claimed that Citibank's actions were fraudulent, in breach of its contractual obligations, constituted wire and mail fraud, and violated their civil rights. Id.

In dismissing the Renes' case, the Eastern District of New York Court noted that such claims were not novel and further discussed that other courts had examined and rejected similar arguments that mortgage companies "did not have 'legal money' (i.e., gold and silver coin) on deposit to back up the loan, but instead had only 'credit and checkbook money' – a bookkeeping entry for the loan– which cannot be legal tender." Id. (internal citation omitted). Not only did these other courts reject such arguments, the plaintiffs were also sanctioned for filing frivolous lawsuits. Id. at 544.

It is clear Young's Complaint requires the same result of dismissal.[5] All of his claims stem from his misplaced belief that a loan can only be valid if issued or backed by gold and silver. Courts

---

[4]This Court recognizes that a decision from the Eastern District of New York is not binding precedent but finds it instructive in analyzing the facts of this case.

[5]While the Court could also sanction Young for filing a patently frivolous lawsuit, the Court declines to do so on this occasion, but it will not hesitate to assess such sanctions should Young persist in filing similar lawsuits.

have rejected the argument that "only gold and silver coin may be constituted legal tender." Foret v. Wilson, 725 F.2d 254, 254-55 (5th Cir. 1984).

Moreover, there are additional reasons to reject Young's position. For example, even if the Court could accept the faulty premise that "legal tender" is defined only in terms of gold and silver coin, there is no requirement that a loan must be made with "legal tender" before a court will deem it valid. Rene, 32 F. Supp. 2d at 544. "While dollar bills and coins have been declared by Congress as legal tender, see 31 U.S.C. § 5103, and so can be used to pay any debt, not all debts need be paid in legal tender if the parties agree." Id. Here, clearly the parties agreed to enter into a loan that did not consist of the actual exchange of gold and silver. Young, at least initially, accepted the terms of the loan, reaped the benefits of the loan by purchasing a car, and made payments on the loan for a period of time. He only came up with this specious argument after he enjoyed the fruits of what the loan made possible for him. Accepting the benefits of a loan constitutes agreement to the use of a negotiable instrument. Id. (internal citation omitted).

Because all of Young's claims, like those of the Renes, derive from the incorrect belief that the bank's loan was not "legal tender," all his claims will be dismissed for failure to state a claim. He simply has not pled the minimal factual allegations on material elements of any of his claims. Furthermore, many if not all of Young's claims of fraud (some of which are duplicative) also can be dismissed under Rule 9(b) for failure to provide the required specificity. For example, even if Young had detailed the false representations that allegedly were made, he has not alleged actual harm caused to him. Instead, as stated above, he benefitted from the loan.

The defamation claims, like all of Young's claims, similarly stem from the faulty premise that the Credit Union's loan was invalid and need not be paid, and the related notion that the Credit Union

8

has no right to make use of lawful procedures to collect on a loan in default. For this reason alone, the defamation causes of action fail to state a claim. In addition, Young has not alleged what false statements caused him actual harm. *See* Pouncy v. First Virginia Mortgage Co., 51 F.3d 267 (Table, Unpublished) (1995 WL 140725 (4th Cir. Apr. 3, 1995) (court rejected similar defamation claim when the plaintiff apparently was referring to the mortgage company's publication of the notice of foreclosure to the plaintiff's creditors).

The Court recognizes that it could dismiss Young's Complaint without prejudice, thereby allowing Young a chance to amend his complaint. "A *pro se* litigant should be given a reasonable opportunity to remedy defects in his pleadings if his factual allegations are close to stating a claim for relief. Hall, 935 F.2d at 1110. However, under these circumstances the Court declines to allow for amendment because Young's factual allegations do not present a close call. In addition, the Court need not allow an opportunity to amend when "it is patently obvious that [Young] could not prevail on the facts alleged . . . . and allowing him an opportunity to amend his complaint would be futile. . . ." Here, it is patently obvious that Young's lawsuit cannot be saved by an amended complaint because his underlying premise is irrational. Because the Court concludes that any amendment would be futile, it will dismiss Young's entire lawsuit, with prejudice.

## Conclusion

The Court concludes that Defendants' Motion to Dismiss should be granted and that Plaintiff Shannon Young's claims will be dismissed, with prejudice. In addition, the Court declines to accept supplemental jurisdiction over the counterclaims asserted by Defendant Credit Union and dismisses those claims, without prejudice.

IT IS THEREFORE ORDERED that:

(1) Defendants' Motion to Dismiss [doc. 27] is GRANTED and that Plaintiff's Complaint is DISMISSED, WITH PREJUDICE; and

(2) Defendant Credit Union's counterclaims against Plaintiff are DISMISSED, WITHOUT PREJUDICE.

UNITED STATES DISTRICT COURT